## U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

L. Xia, W. Liu, H. Chen, J. Chen, H. Lun H. Li, et al
)

|  |  |
|---|---|
| ) | No. CIV_____ |
| ) | COMPLAINT FOR CIVIL |
| Plaintiffs, ) | RIGHTS VIOLATIONS UNDER |
| ) | 42 USC 1983, DEPRIVATION |
| v. ) | OF LIBERTY AND PROPERTY |
| ) | RIGHTS WITHOUT |
| John F. Kerry, Secretary of the UNITED ) | PROCEDURAL DUE PROCESS |
| STATES DEPARTMENT OF STATE ) | DECLARATORY AND |
| Jeh Johnson, Secretary of the ) | INJUNCTIVE RELIEF AND |
| UNITED ) | FOR A WRIT IN THE NATURE |
| STATES DEPARTMENT OF ) | OF MANDAMUS TO COMPEL |
| HOMELAND ) | DEFENDANTS' RETURN OF |
| SECURITY; ) | UNITED STATES PASSPORT |
| In Official Capacities. ) | AND NATURALIZATION |
| | CERTIFICATE TO PLAINTIFFS |
| )Defendants. ) | **Jury Trial Prayed** |

_____

## **COMPLAINT**

### I. INTRODUCTION

1. This is a civil action under 42 U.S.C § 1983 seeking damages and injunctive relief against Defendants, in both their official and individual capacities, for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of inalienable rights secured under the Constitution and laws of the United States ("U.S."); against Plaintiffs for their exercise of constitutionally protected life, liberty and property without due process; and for a pattern of invidious discrimination on account of race and ethnic origin by depriving Plaintiffs' U.S. citizenship by improper means. This case arises under the U.S. Constitution and 42 U.S.C. § 1983 and 1988, as amended. This Court has jurisdiction.

2. Plaintiffs' grievances specifically derive from their U.S. citizenship, proven *prima facie* by the existence of their genuine, officially issued U.S. Passports.*

_____

*That the bearer of an officially issued U.S. passport laid the solid *prima facie* evidence of her U.S. citizenship is also seen in decisions of the administrative proceedings. The Board of Immigration Appeals ("BIA") held: "Thus, the petitioner's apparently valid United States citizen passport will constitute conclusive proof of his claimed United States citizenship…. unless it is invalid on its face." Citing 22 U.S.C. Sec. 2705 (1982) " Accordingly, we hold that unless void on its face, a valid United States passport issued to an individual as a citizen of the United States is not subject to collateral attack in administrative immigration proceedings but constitutes conclusive proof of such person's United States citizenship." Matter of Villanueva, Interim Decision #2968, BIA, 1984 * Peignand v. INS, 440 F.2d 757 (1st Cir. 1971); Gillars v. United States, 182 F.2d 962 (D.C. Cir. 1950).

3. Plaintiffs' U.S. citizenship has been collaterally and groundlessly attacked by the arbitrary cancellation and/or confiscation by Defendants and Defendant's Federal Departments (canceled in fact by the Department of State ["DOS"], but in collusion with the Department of Homeland Security ["DHS"]) of Plaintiffs' U.S. Passports, without due process of law, and thereby in manifold violation of U.S. and international law, most likely all or in part because of their original Chinese ethnicity.  All or most of the 193 similarly situated, targeted victims appear to be originally of Chinese race, ethnicity and nationality.

4. Plaintiff Ms. Lihong Xia, is a resident of Edison, New Jersey, with her domicile at 4 Charles Court, Edison, NJ 08820.  Ms. Xia has been a naturalized U.S. citizen of original Chinese ethnicity, since June 3, 2004.  Shortly thereafter, on June 16, 2004, she obtained her U.S. Passport  bearing Passport Number 017382376. (***Exhibit 1***）

5. An officially issued U.S. Passport is conclusive, *prima facie* evidence, independent of any other documentation (i.e., naturalization certificate, representations by DHS, etc.) of the named bearer's U.S. citizenship.*

6. As Plaintiff Xia offered her U.S. passport for forensic examination to ascertain her citizenship during a period of defective administrative proceedings but in vain.  To establish her standing, Plaintiff prays this Hon. Court to order a U.S. Crime Laboratory a Forensic Examination of her U.S. Passport, whose original copy is now in the custody of the Defendant DHS, if any controversies arise from this threshold factual issue.

7. The records of the United States Citizenship and Immigration Service ("USCIS"), a subsidiary component of Defendant DHS, show that Plaintiff Xia properly filed her Application for Naturalization (Form N-400) with Defendant DHS on or about May 6, 2003, following all necessary procedural and regulatory requirements, including, but not limited to, paying the USCIS processing fee and the fee for fingerprinting; submission of a Form N-400 Application; proof of her Form I-551, the legally admitted permanent resident status; photographs; and any other requirements not herein enumerated. *(Group proof Exhibit 2)*

8. With her Form N-400 processed by Defendant DHS' USCIS, Plaintiff Xia's application was granted and she was duly issued her Naturalization Certificate after taking the Oath of Allegiance on June 3, 2004.*(Exhibit #3)*

9. Immediately after Plaintiff Xia received her U.S. citizenship, she traveled to the People's Republic of China ("PRC" or "China") using her U.S. Passport as the conclusive proof of her U.S. citizenship. The fact of her new U.S. citizenship became known to the PRC government.  Consequently, the  PRC government revoked her Chinese citizenship simultaneously and retroactively; viz., the revocation took effect retroactively to the date when Plaintiff Xia was sworn to become a naturalized U.S. citizen, in accordance with the Law of the PRC Governing Citizenship and Nationality.  That law offers no procedures or guidelines for automatic reinstatement of a PRC citizenship if an affected person's

---

* "Unless void on its face, a valid United States passport issued to an individual as a citizen of the United States is not subject to collateral attack in administrative immigration proceedings but constitutes conclusive proof of such person's United States citizenship." MATTER OF VILLANUEVA, Interim Decision #2968, BIA, 1984

third country citizenship is lost or revoked; it only mandates that a PRC citizen's receipt of any foreign country's citizenship will automatically result in the loss of his/her PRC citizenship.  Plaintiff Xia will file a separate Notice for this Honorable Court to take related Foreign (PRC's) Law addressing Citizenship and Nationality into evidence after this case is docketed pursuant to the Federal Rules of Civil Procedures; *(Art. 9: "Any Chinese national who has settled abroad and who has been naturalized as a foreign national or has acquired foreign nationality of his own free will shall automatically* **lose** *Chinese nationality." Please See "Nationality Law of the P.R. C."  **Exhibit #4**)*

10. After Plaintiff Xia became a naturalized U.S. citizen and received her U.S. Passport from the co-Defendant DOS in the year of 2004, she traveled internationally back and forth without any problems for approximately a dozen of times.

11. Without Maranda warning, notice or due process, upon re-entering the U.S. on or about October 26, 2009, Plaintiff Xia's U.S. Passport was confiscated by Defendant DHS through its subsidiary component, its U.S. Immigrations and Customs Enforcement ("ICE").  This followed her numerous voyages outside the U.S. using her officially issued U.S. Passport.  This passport, number 017382376, was issued by Defendant DOS on June 16, 2004, and was valid until June 15, 2014.

12. When Defendant DHS' ICE confiscated Plaintiff Xia's U.S. Passport, its agents conducted an investigative interview with Plaintiff Xia after taking her into their custody.   Plaintiff made numerous attempts declining to answer any questions without the counsel of an attorney, as was her Constitutional right, and refused to sign the interrogation record *(Form I-877 Exhibit #5)*, in violation of any due processes.  In fact, Plaintiff Xia insisted on being provided an attorney or the opportunity to have one present during questioning by DHS ICE agents.  In a process more appropriate to the police agents of Plaintiff Xia's former nation, the interrogators refused to allow her assistance of counsel, instead conducting a one-sided interrogation whose questions Plaintiff Xia declined to answer, as was her Constitutional right.  Plaintiff was ultimately released from ICE custody and notified that she was deemed an "arriving alien" and was referred to an Immigration Judge (IJ) for an exclusion hearing. *(Exhibit 6)*

13. After Plaintiff Xia's U.S. passport was confiscated without cause by Defendant DHS' ICE component on or about October 26, 2009, Defendant DHS initiated a Removal Proceeding at the United States Immigration Court at 970 Broad Street, Newark, NJ *(Exhibit #6)*.  That short-lived removal proceeding ended with the presiding Immigration Judge dismissing the case and closing the removal proceedings on February 18, 2010 due to Defendant DHS' "failure to prosecute" the removal proceedings it initiated against Plaintiff, according to the recorded announcement by the Newark Immigration Court's telephonic automated system.

14. Plaintiff Xia made multiple demands to Defendant DHS to return her seized U.S. passport, starting December 9, 2011; *(Exhibit #7)*  these efforts proved fruitless.

15. On January 5, 2011, Plaintiff Xia applied for reissuance of her U.S. Passport with Defendant DOS.  She did so in accordance with established law that no entity save the Judiciary Branch of the U.S. Government is empowered or legally authorized to revoke a U.S. citizen's U.S. citizenship without denaturalization proceedings; and that being stripped of her right to possess a U.S. Passport and travel outside the U.S. without due process or criminal charges pending against her, baselessly denied her one of the fundamental rights entitled to her as a naturalized U.S. citizen. Plaintiff Xia duly paid the processing fee, as any other U.S. citizen would do.  Her two checks, totaling $320.00 for passport issuance processing fees, were cashed by Defendant DOS on or about January 9, 2011. *(Exhibit #8)*

16. Defendant DOS rejected Plaintiff Xia's application on or about February 11, 2012 and rejected all following prays for reconsideration.*(Exhibit 9)* Its stated basis was that the Plaintiff's Naturalization Certificate had been "canceled" by Defendant DHS, the issuing Federal Department, the USDHS. Actually as of that moment, there was no cancellation decision in place, it was only a DHS/CIS Notice of Intent to Cancel ***(Exhibit #9A) Therefore, Defendant DOS' premature revocation appears having been made ahead of time and without grounds.*** The conflicting records show that the Plaintiff's Naturalization Certificate had not been "canceled" until October 2, 2012 ***(Exhibit #10)*** , that was much later than the date when the DOS prematurely revoked the passport based upon a non-existence of an alleged CIS "Cancellation" at the time, while the proceedings leading to cancellation were later reopened upon the USCIS initiation. (***(Exhibit #11)***

17. In Defendant DOS' official correspondence dated September 6, 2012, Defendant DOS admitted retroactively that Plaintiff Xia's U.S. passport #017382376 was "revoked" pursuant to 22 CFR 51.62(b) based upon the alleged (intent of—added) cancellation of her Naturalization Certificate by Defendant DHS; Defendant USDOS' such a revocation merely based upon a sister agency's "intent to cancel the Certificate, a piece of legal paper, rather than status by itself, was unripe, reckless, and invalid;

18. The record shows that Defendant DHS, while having "revoked" Plaintiff's U.S. Passport on or about February 11, 2012, and confirmed such revocation on September 6, 2012 and its correspondence dated October 7, 2013, did not offer any hearings or anything else to Plaintiff Xia resembling due process, or any kind of opportunity to respond to Defendant DHS' allegations; nor had it given any notice of hearings or of its intended action to Plaintiff before, during or after the revocation. (***(Exhibit #12)***

19. Neither Defendant has made any attempt during the period from October 26, 2009 up to the present date of filing, to return seized or "revoked" passport back to Plaintiff Xia, while at the same time withholding Plaintiff's passport application fees. It is not clear in the Government's vague allegation whether, or how much, Plaintiff Xia had ever been coerced or blackmailed to pay for "procurement," if any, of a U.S. citizenship by any uniformed government officers under the national logo, as an intergral part of the government of the United States, under the theory of *respondeas superiori.* As of this date, Plaintiff Xia's passport, naturalization certificate, and fees have remained seized and in Defendants' custody, and she has been denied due process (e.g., denaturalization proceedings, removal proceedings, passport status hearing, or any evidentiary hearings). It is apparent – although, since Defendant DHS has declined to afford Plaintiff Xia any kind of due process before a judge in a U.S. courtroom, as is such a proper procedures being required for stripping of U.S. citizenship via legitimate formality and proceedings, Plaintiff remains in a nebulous and stateless limbo – that Defendant DHS intends to deprive Plaintiff Xia of her "naturalization certificate" while she theoretically maintains US citizenship as matter of law, precluding her from any legal possibility to have her Chinese nationality reinstated. The chaotic mess and contradiction between such substantive Federal law and agency regulatory procedures have wastefully sandwiched the Plaintiffs' miserable stateless status, *de facto.* .

20. During the period from June 2004 through October 2009, Plaintiff traveled freely

on numerous occasions outside the U.S. During the period from October 2009 through the date of this filing, Plaintiff Xia has been unable to travel outside the U.S. Her right to travel - and nebulously, her very naturalization status - have been stripped from her by Defendants without due process.*

21. Plaintiff Xia's rights were further violated by Defendants through an opaque, unilateral administrative proceeding that afforded her no meaningful opportunity to respond to the accusations against her or to prevent Defendant DHS' administrative decision. Because Defendant DHS did not, and could not, revoke Plaintiff's U.S. citizenship without offering Plaintiff denaturalization proceedings adjudicated by the U.S. District Court, it simply "canceled" Plaintiff Xia's Certificate of Naturalization in its closed administrative proceeding. Therefore, theoretically, Plaintiff Xia's actual citizenship remains intact. However, it is a hobbled "U.S. citizenship" which affords her none of the benefits or privileges a U.S. citizen normally enjoys. Although Plaintiff Xia has rejected any proposal to attempt a reinstatement of her PRC citizenship, she is in any case barred from having her PRC citizenship reinstated pursuant to the Law of the PRC Governing Citizenship and Nationality. By administrative fiat, Defendants have effectively left Plaintiff Xia stateless.**

22. The larger group of similarly-situated victims, including Plaintiff Xia, is entirely of original Chinese ethnicity and nationality. These Plaintiffs, like Plaintiff Xia, are still theoretically U.S. citizens with their U.S. citizenship intact in absence of denaturalization proceedings; however, their U.S. citizenships have been disabled and their rights stripped without due process. Their naturalization certificates, theoretically a piece of "re-issuable" paper, were administratively "canceled" by Defendant DHS without due process or any opportunity to respond to Defendant DHS' allegations. Plaintiffs have been discriminatorily placed into a gray limbo of *de facto* statelessness.

---

*A U.S. citizenship and its proof, an officially issued passport, falls into category of "property rights", which should not be taken without due process:

"This is not a naturalization proceeding in which the Government is being asked to confer the privilege of citizenship upon an applicant. Instead the Government seeks to turn the clock back twelve years after full citizenship was conferred upon petitioner by a judicial decree, and to deprive him of the priceless benefits that derive from that status. *In its consequences it is more serious than a **taking of one's property***, or the imposition of a fine or other penalty. For it is safe to assert that nowhere in the world today is the right of citizenship of **greater worth** to an individual than it is in this country. It would be difficult to exaggerate **its value** and importance. By many it is regarded as the highest hope of civilized men. This does not mean that once granted to an alien, citizenship cannot be revoked or canceled on legal grounds under appropriate proof. But such a right once conferred should not be taken away without the clearest sort of justification and proof. So, whatever may be the rule in a naturalization proceeding (see United States v. Manzi, 276 U.S. 463 , 48 S.Ct. 328.)

**Theoretically, all the plaintiffs are still U.S. citizens whose citizenship can only be taken away through denaturalization proceedings by the U.S. Judiciary Branch and none of them had ever been offered such a due process mechanism and opportunity yet. Yet such limbo citizenship does not help, yet makes things worse. That they are all theoretically still U.S. citizens does not help them at all. They hold their "U.S. citizenship" yet all benefits and   The Attorney General has the power to cancel the certificate if it has been illegally or fraudulently procured, but *such cancellation does not affect citizenship status.* See 8 U.S.C. S 1453. Citizenship status must be taken away through denaturalization proceedings by U.S. district court, rather by the agency which issues the naturalization certificate . Irina Gorbach v. Janet Reno 219 F.3d 1087 (9th Cir. 2000) (Emphasis added)

23. In complete different pattern of government practice being adopted against 107 similarly situated persons of other original ethnicity (Exhibit #12) for taking away their U.S. citizenship, most of them are Caucasian whites, then most of them, if not all of them, appear to have received full evidentiary hearings through adequate, full and fair denaturalization proceedings; **The list of denaturalized persons, representing a pattern of practice in a differently situated group of ethnicity, demonstrates that most denaturalization have, for one reason for another, resulted from war crimes – including, relevant to the instant case, fraudulent obtaining of citizenship by failing to disclose war crimes. The anomaly here is that DHS is attempting to strip these people, of original Chinese ethnicity, of their citizenship privileges w/o due process, and for grounds far less than war crimes – being blackmailed by a crooked adjudication officer, may not be equal to herding people into gas chambers. This pattern of practices in such racially based distinction may highly likely highlight what can be termed as negative racial profiling discriminating Asian race. Race element in somewhere can be clearly seen in these Plaintiffs while their losing of privileges of citizenship without due process, given to the pattern of deprivation of privileges of U.S. citizenship properly through full due process of denaturalization being fully adopted in different group of persons, mostly non-Asian ethnicity group.**

24. Defendant DHS stated reasons for "canceling" Plaintiffs' naturalization certificates were based upon its findings that records in support of their naturalizations were incomplete or evidence in support of their naturalization was insufficient. In so doing, Defendant DHS holds Plaintiffs accountable for government's own administrative incompetence and irregularity. If there were any questions regarding suitability of any of the Plaintiffs for naturalization, those questions should have been raised prior to naturalization. With regard to its incomplete record-keeping, there should be no presumption on the Government's part that Plaintiffs' documentation was in any way defective or incomplete at the time their applications were processed. In short, through its arbitrary "cancellation," Defendant DHS has presumed Plaintiffs guilty after the fact, administratively "convicted" them, and sentenced them to statelessness, all without a transparent due process and by circumventing the properly vested adjudicator of denaturalization, the Federal judiciary branch.

25. Defendant DHS may have "canceled" Plaintiffs' naturalization certificates based upon its finding that a convicted U.S. immigration officer (Defendant DHS' agent and employee) Robert Scholfield had varied degrees of personal involvement, according to Mr. Scholfield's alleged hearsay statement, in the proceedings leading to issuance of Plaintiffs' Naturalization Certificates, and that the proceedings might have involved internal administrative irregularities or misconducts by Defendant DHS and its aforementioned employee. According to the theory of *respondeat superior,* such internal irregularities and their adversary consequences should have been attributed or imputed to Defendant DHS, rather than being imputed to the victims of such irregularities – in the instant case, the Plaintiffs – who had no knowledge of or control over such issues of government agency's irregularities.

26. No government agency has offered any compensation to Plaintiff Xia or her fellow Plaintiffs for they having been apparently victimized by such alleged misdeeds and irregularities on Defendants' side. .

27. Underlying alleged administrative irregularities, if any, had occurred about a
    decade prior to Defendants' acts in almost all these similarly situated cases;
    therefore, *laches* did occur before Defendant DHS might even consider raising the
    issue.  In every case, the 5-year statutory limitation had been reached regarding any
    remotely possible accusation of alleged "immigration fraud."*

28. Plaintiff Wei Liu (U.S. Citizenship Certificate Number 26837850) is a similarly
    situated victim of Defendants' response to the controversies surrounding the Robert
    Scholfield case.  Plaintiff Liu is a U.S. Citizen who obtained his U.S. Naturalization
    Certificate and U.S. Passport and hence became a U.S. citizen in or about 2001. On
    December 7, 2007, while Plaintiff Liu was traveling in the PRC, he applied at the
    Defendant DOS' U.S. Embassy in Beijing to have his U.S. Passport renewed.
    Defendant DOS, through its agents in the U.S. Embassy in Beijing, confiscated
    Plaintiff Liu's passport without offering him any proper and adequate proceedings
    for over 5 years - specifically, any evidentiary hearings, and/or any prior notice
    thereof; and his Naturalization Certificate was revoked at a later date.  As with
    Plaintiff Xia, Plaintiff Liu's previous PRC citizenship had been revoked upon his
    receipt of U.S. citizenship.  As a result of Defendants' arbitrary acts, without notice
    or due process, Plaintiff Liu has been left effectively stateless, thousands of miles
    from the country in which he is still theoretically a citizen.  He is unable to return
    home; to work in the nation in which he is stranded; or to exercise most other rights.

29.  On August 3, 2008, Plaintiff Liu was notified by a letter that he was charged with
    criminal offense of immigration fraud, for which no record shows that he had any
    informed knowledge or control, in the U.S. District Court for Northern Virginia, but
    that there was no hearing scheduled. On June 27, 2013, almost 5 years later, Mr. Liu
    was provided an administrative hearing in the U.S. Embassy in Beijing, China,
    relating to either revocation of his passport according to what Defendant DHS
    interpreted as INA § 340(a), 8 U.S.C. § 1451(a) and INA § 340 (e) or (h),
    respectively. Plaintiff Liu attended this hearing, yet his U.S. Citizenship was said to
    have been "canceled" by Defendant DHS's USCIS in violation of well-established
    law of the United States to be discussed *infra*.

30. The U.S. Embassy in Beijing, as an outpost of co-Defendant DOS, has failed to
    provide a reasonable reply to Plaintiff Liu's numerous inquiries regarding his
    passport and naturalization status; instead, it directed Plaintiff's inquiries to
    Defendant DHS, which has also failed to present him a timely explanation on his
    U.S. citizenship status. Defendant DOS has maintained a practice of failing and
    refusing to timely grant or deny the renewal of U.S. Passport applications or to
    timely notify Plaintiff regarding the results of his renewal application, targeting a
    singled-out group of applicants in which he is unfortunately situated.  Plaintiff Liu's
    due process rights, endowed and protected by the U.S. Constitution, have been
    violated by both agencies. At present, he is stateless and trapped in a legal limbo.
    He has waited more than 5 years since his U.S. Passport and naturalization
    certificate was taken away without a denaturalization proceeding by the U.S.
    Judicial Branch, to which he is entitled.* (Group Exhibits 12A.)

_____
* Garcia v. the U.S. Attorney General, 07-2164, 3rd Cir. 2008.

31. Plaintiff Liu has since suffered grievously as a result of Defendants' errors, omissions, and arbitrary acts. He has been deprived of vital liberty and property rights attached to a U.S. citizen without due process, including but not limited to: a denaturalization proceeding with fair and full evidentiary hearings; substantial and unique benefits of citizenship, including protection of the laws of the United States equal to that granted to natural-born citizens; political rights, including the right to vote; the right to enter and remain in the U.S.; freedom of movement and travel; the right to obtain a U.S. Passport; and the protection of the U.S. Government when outside the U.S. He also has been subjected to the fear, despair, discrimination and uncertainty engendered by the inability to obtain or renew his U.S. passport, the inability to travel and carry out necessary activities, including medical treatment. The lack of a passport has caused Plaintiff Liu, an architect working in China, to suffer extremely detrimental consequences. He is not able to access his personal bank accounts in China. He is often stopped by the Chinese police. He is not able to bring his children, both U.S. Citizens, back to the U.S. for education. (Please refer to Group Exhibits 12A.)

32. Plaintiffs request that this Court issue injunctive relief and a writ in the nature of *mandamus* compelling the Defendants to renew and reissue their U.S. Passports and return or reissue their naturalization certificates to them under the U.S. Constitution and 8 U.S.C. § 1451.

---

* An administrative proceeding is by no means a due process proceeding. "It is obviously not proper by summary administrative procedures, without full course of due process. " SCI INF.I HERMAN v. UNITED STATES, 320 U.S. 118 (1943) SCI INF.I HERMAN v. UNITED STATES, 320 U.S. 118 (1943) (emphasis added)
In such a "full course of due process" proceedings, it should be the Government, rather than this complainant, that has the Burden of Proof by Showing "Clear, Unequivocal, and Convincing Evidence. …the burden of proof shifted upon the government which initiates the proceedings: "To set aside such a grant the evidence must be 'clear, unequivocal, and convincing'' It cannot be done… leaves the issue in doubt. See Maxwell Land-Grant Case (United States v. Maxwell Land-Grant Co.), 121 U.S. 325, 3S1 , 7 S.Ct. 1015, 1029; United States v. San Jacinto Tin Co., 125 U.S. 273, 300 , 8 S.Ct. 850, 864; cf. United States v. Rovin, C., 12 F.2d 942, 944. See Wigmore, Evidence, (3d lid.) 2498. This is so because rights once conferred should not be lightly revoked. And more especially is this true when the rights are precious and when they are conferred by solemn adjudication, as is the situation when citizenship is granted/' Schneidcrman v. United Stales, 320 U.S. 118 (1943) "Likewise here, there is an established and carefully constructed scheme: the Attorney General naturalizes, the district courts denaturalize,... And likewise here, implying authority for the Attorney General to take away people's citizenship administratively would gravely upset this carefully constructed legislative arrangement.'' Irina Gorbach v. Janet Reno 219 F.3d 1087 (9th Cir. 2000) "An executive department cannot simply decide, without express statutory authorization, to create an internal executive procedure to deprive people of those rights without even going to court..one way to revoke the citizenship of a naturalized American citizen: that is for a United States Attorney to file a petition in a United States District Court. There is no statutory' warrant for a second way, whereby the Immigration and Naturalization Service would revoke a person's citizenship administratively." SCHNEIDERMAN v. UNITED STATES, 320 U.S. 1 IS (1943)

33. Plaintiff Liu's rights to liberty and property, viz., his arbitrarily deprived U.S. citizenship should be reinstated;

34. Plaintiff Hoi Lun H. Li, (U.S. Citizenship Certificate Number: 27772623) is a similarly situated victim in the controversies surrounding the Robert Scholfield case. Plaintiff Li is a U.S. Citizen who obtained her U.S. Naturalization Certificate and U.S. Passport, and hence became a U.S. citizen, in or about 2003; Plaintiff Li was stopped by Defendant DHS' ICE subsidiary at Los Angeles International Airport (LAX) where her U.S. Passport was confiscated and later her Certificate of Naturalization was taken away without due process proceedings. During the interrogation by ICE agents, as with Plaintiff Xia, she was refused right to counsel and she was not read the Miranda warning.

35. Plaintiff Jinsong Chen, (U.S. Citizenship Certificate Number: 26368482) is a similarly situated victim in the controversies surrounding the Robert Scholfield case.  Mr. Chen is a U.S. Citizen who obtained his U.S. Naturalization Certificate and U.S. Passport and hence became a U.S. citizen in or about 2005; Plaintiff Chen was stuck in Shanghai, unable to renew his U.S. Passport with the co-Defendant DOS, and like Plaintiff Liu, has since been stranded and effectively stateless in the PRC.

36. All of the above Plaintiffs' U.S. Passports were revoked without hearings, and their naturalization certificates "canceled" without due process proceedings.   These plaintiffs are experiencing significant depression over the uncertainty of their futures, even though they are theoretically, in the eyes of law, still U.S. citizens.  .

37. With U.S. passports taken, and naturalization certifications canceled, without due process proceedings, without full and fair evidentiary hearings and notices thereof, Defendants' unreasonable and arbitrary acts, and administrative misconduct, which narrowly targeted this group of defendants in Asian ethnicity without offering them a full-fledge hearings, while other races of similarly situated people, have received full due process protections, have deprived Plaintiffs of their constitutional rights of property and liberty under the 5th Amendment without due process, and violated Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983.

38. It should also be noted that should Defendant DHS achieve unchallenged success in the instant case to "cancel" naturalized citizenships capriciously, frivolously and *ex post facto*, without due process for the affected citizens, Defendant DHS could set a precedent for such arbitrary "cancellations" that would a) usurp the rightful powers of the Federal judiciary in such matters, and b) subject literally millions of naturalized Americans to potentially have their rights deprived by administrative fiat. Having such a Damocletian sword hung over their heads would literally create a persecuted class comprised of every single living naturalized American citizen, and their families.

39. Plaintiff requests that this Court issue injunctive relief and a writ in the nature of *mandamus* compelling the Defendants to renew his U.S. passport and return or reissue his naturalization certificate to him under the U.S. Constitution and 8 U.S.C. § 1451.

## II. JURISDICTION

40.  This Court has subject matter jurisdiction under Federal question jurisdiction pursuant to 28 U.S.C. § 1331;  42 U.S.C. § 1983 empowers and mandates the U.S. District Court to hear the claims and grievances of civil rights violations, i.e., the takings of citizens' liberty and property rights under the 5th Amendment without due process.  Jurisdiction is also found pursuant to 28 U.S.C. § 1361, the *mandamus* statute and the Declaratory Judgment Act; and 5 U.S.C. § 702, the Administrative Procedure Act ("APA").

## III. VENUE

41. Venue in the District of Columbia is proper pursuant to Title 28 U.S.C. § 1391(e) in that Defendants John F. Kerry and Rand Beers are residents of the District of Columbia, a substantial part of the activities complained of occurred in the District of Columbia, where both defendant's organizational headquarters are situated.

## IV. PARTIES

42. Plaintiffs include the principal U.S. Citizens and his or her spouses, also U.S. Citizens.

43.1. Plaintiff Lihong Xia is a naturalized U.S. citizen and resident of Edison New Jersey, with her U.S. domicile located at 4 Charles Court, Edison, NJ 08820;

43.2. Plaintiff Wei Liu (U.S. Citizenship Certificate Number 26837850), is a resident of Los Angeles County, California and now temporarily living under duress in Beijing, China. His wife Hua Chen's U.S. Passport and Certificate of Citizenship were also administratively canceled.

43.3. Plaintiff Hoi Lun H. Li, a U.S. Citizen, is a resident of Los Angeles County, California and now living in Los Angeles, California.

43.4. Plaintiff Jinsong Chen, a U.S. Citizen, is now living under duress in Shanghai, China.

44 . Defendants

45.1: Defendant John F. Kerry is the Secretary of the U.S. Department of State (DOS). He and his subordinates - namely in this case, the U.S. Passport Office under the DOS, and the U.S. Embassy in Beijing, China - are involved in the acts challenged in this action in both their official and individual capacities.  In addition, Secretary Kerry is responsible for his subordinates' actions in their official and personal capacities, under color of law, that irreparably harm Plaintiffs and violate their constitutionally protected rights, under the theory of *respondeat superior.* Defendant Kerry's Official Address is: 2201 C Street NW, Washington, DC 20520 .

45.2: Defendant Jeh Johnson is the Secretary of the U.S. Department of Homeland Security (DHS). He and his subordinates - namely in this case, officers of USCIS and ICE - are involved in the acts challenged in this action in both their official and individual capacities.  Additionally, Secretary Johnson is responsible for the acts

challenged, in both his official and individual capacities, because he is responsible for his subordinates involved in the acts challenged in this action in both their official and individual capacities, under color of law*, that irreparably harm Plaintiffs and violate their constitutionally protected rights, under the theory of *respondeat superior*. Defendant Beers' Official Address is:  Department of Homeland Security, 12th & C Street SW, Washington, DC 20024

Defendants are "persons" subject to suit within the meaning of 42 U.S.C. § 1983, in their individual capacities in irreparably harming, under color of law,  Plaintiffs by denying their constitutional rights to liberty and property without due process. Further, it appears likely that Defendants have subjected Plaintiffs to a pattern of invidiously targeted discrimination based on their Chinese ethnicity, race and country of origin.

## V. LAW AND REMEDIES

46.  No administrative remedies under the U.S. Constitution, the Immigration and Naturalization Act ("INA") and the Administrative Procedure Act ("APA") remain to be exhausted that would not be futile or would provide the relief sought in this complaint.

47.  As a result of Defendants' misconduct, Plaintiffs were required to retain counsel and to incur costs, fees and expenses in prosecuting this case. Plaintiffs intend to seek fees under the Equal Access to Justice Act.

## VI. THE CHALLENGED PRACTICES AND FACTUAL ALLEGATIONS

48.  Plaintiffs are appalled at Defendants' scorn for due process, the rule of law, fairness and the presumption of innocence, coded in this country's Constitution and related laws and regulations.

49. On October  26, 2009, Defendant DHS, through its ICE component agency, seized Plaintiff Lihong Xia's U.S. passport at the port of entry, with no intent or commitment to give it back to the Plaintiff.  The seizure and taking was administratively proceeded without offering Plaintiff any hearings addressing return or forfeiture of Plaintiff's passport afterwards;

_____

* During the time between 2000-2004, Mr.Robert Schofield was not a "*former* USCIS employee" as being alleged by the Defendant DHS, he was rather "an USCIS employee in uniform in active duty" under the Defendant's supervision instead. Mr. Schofield was then, therefore, an integral part of the Federal Government. Unless there is evidence to prove that the Plaintiffs knowingly and maliciously participated in what has been from time to time alleged or implied "fraud" and "illegality", there is no basis to impute the agency's mistakes, errors and irregularities to the respondent, as either an unknown victim or incidental beneficiary, rather than a knowing co-conspirator. On the contrary, Defendant DHS Secretary Johnson should be imputed with all such faults under the *respondeat superior*.

50. On September 6, 2012, Defendant DOS, for the first time,  relayed and officially notified the Plaintiff Lihong Xia that her U.S. Passport 017382376 was revoked without offering Plaintiff with any pre-revocation or post-revocation evidentiary hearings or notice thereof.

51.  On October 7, 2013, Defendant DOS rejected Plaintiff's demand for remedy of reissuing the Plaintiff her U.S. Passport based upon her "U.S. citizenship" that has theoretically remained intact regardless Defendant DHS's arguable "cancellation of naturalization certificate."

52. Finally, on October 25, 2013, with finding of errors, defects, incompleteness, internal irregularity, and regulatory defects, which is so common in agency's administrative proceedings that it is highly unlikely to interpose a blame on the Plaintiff anyway.* Therefore,  Plaintiff Lihong Xia categorically, consistently denied her knowledge or involvement during the interview, which ended upon with incompleteness without finality, Defendant DHS "canceled" Plaintiff's Certificate of Naturalization.

53.  Plaintiff Xia's Naturalization Certificate was so prematurely "canceled" on October 25, 2013 without a full, adequate, transparent, and competent administrative hearing, and without rendering such a summary administrative proceedings a finality. The administrative hearing has left Plaintiff stateless and in limbo, although unlike several of her co-Plaintiffs, at least she remains residing in the U.S.

54. In Defendant DHS's administrative hearings leading to its unconstitutional and arbitrary actions – as well as its probably illegal interrogation in which it denied this Plaintiff the benefit of counsel – at no time was an admission or a shred of evidence produced that this Plaintiff had ever committed immigration fraud, bribery or illegality to have "procured" her naturalization certificate. The entire case file only shows an incomplete administrative case file in the chain of custody on Defendant DHS' side.  It is on the basis of an incomplete file that Defendant DHS has apparently deigned to strip Plaintiff Xia of her rights, in a fashion that violates other of her rights.

55. On December 7, 2007, the U.S. Embassy in Beijing, without a court order or decision, confiscated Defendant Wei Liu's U.S. passport when he applied to have his U.S. Passport renewed, and then his Citizenship Certificate at a later date.

---

*Errors or operational defects or incompleteness of records in the DHS custody should never even be administrative grounds to cancel a certificate:  "The Attorney General's own auditors reported that the INS made at least one processing error in nine out of ten of the naturalization cases sampled." In 90.8% of the cases reviewed, INS and KPMG found that INS had made at least one processing error, with an average of two errors per case."  Department of Justice, INS and KPMG Peat Marwick Complete Review of August 1995, -September 1996 Naturalizations at 3 (Feb. 9, 1998) (press release) (introducing KPMG final audit of naturalization of 1.049,867 individuals from August 1995 through September 1996). Quotes being cited by Justices of the 9tn Circuits, sitting in Irina Ciorbach v. Janet Reno 219 F.3d 1087 (9th Cir. 2000) "Although many or most errors might not lead to an erroneous result, the audit reported that 3.7 percent of the naturalizations were erroneous in result." Irina Gorbach v. Janet Reno 219 F.3d 1087 (9th Cir. 2000)

56.  After that, Plaintiff  Liu called and traveled to the U.S. Embassy many times, asking for answers, but the U.S. Embassy refused to renew his U.S. Passports.

57. Plaintiff has waited over four years since his passport was confiscated and has not been notified as to whether he can get it back, have it renewed or have a hearing on its validity.  Finally he had a Section 342 hearing in the U.S. Embassy in Beijing, China on May 27, 2013 yet a decision to cancel Mr. Liu's Certificate of Citizenship was made on September 4, 2013.

58. As a result of Defendant DOS' practice of failing and refusing to approve Mr. Liu's passport renewal applications and to expeditiously schedule hearings results in severe and unsettling consequences to Plaintiff, Plaintiff has been deprived of his most valuable and constitutionally protected rights to liberty and property without due process, particularly without a full, fair and meaningful proceeding of denaturalization , highly likely for underlying racial profiling reason, given to numerous other similarly situated were all given such due process protection while there is no Chinese ethnicity is found in that group of 107 cases.  Such a probably racially selected and targeted neglect and even prosecution, apparently in violation of civil rights. *

59.        Plaintiff has exhausted his administrative remedies and, for his losses, has no adequate remedy at law.

60.  Plaintiff Li and Chen have suffered similar or same treatment by the defendants.

_____

** A claim under 42 U.S.C. § 1983 for constitutional deprivation of liberty or property without due process of law. To establish a procedural due process claim, a plaintiff must first show the deprivation of a liberty or property interest protected by the Due Process Clause. *Board of Regents v. Roth*, 408 U.S. 564 (1972) A naturalized citizenship is within the zone of protected "life, liberty and property": "This Court has long recognized the plain fact that to deprive a person of his American citizenship is an extraordinarily severe penalty. The consequences of such a deprivation may even rest heavily upon his children. 8 U.S.C. § 719, 8 U.S.C.A. § 719. As a result of the denaturalization here, petitioner has been ordered deported. 'To deport one who son claims to be a citizen obviously deprives him of *liberty* * * *. It may result also in loss of both *property and life*, or of all that makes life worth living.' Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938. KLAPPROTT v. United States，335 U.S. 601 （1949).

## VII. FIRST CLAIM FOR RELIEF
### (Violation of the United States Constitution)

62.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 61 inclusive.

63. Defendants have violated the Due Process Clause of the Fifth Amendment, which provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.  The procedural Due Process requirement of the Fifth Amendment entitles a person to be heard at a meaningful time and in a meaningful manner before a deprivation of liberty occurs. Mathews v. Eldridge, 424 U.S. 319, 334 (1976). The process that is due depends upon the private interest affected by the official action, the risk of erroneous deprivation of the interest, the value (if any) of additional or substitute procedural safeguards, and the government's interest, including fiscal and administrative burdens that additional or substitute procedural requirements would impose. Mathews, 424 U.S. at 335.

64. Defendants also have violated the Fourteenth Amendment of the U.S. Constitution, which stated, in part, that:

> *"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."\**

65.  Plaintiffs' U.S. Passport and Naturalization Certificates were taken away by the Defendants without due process of law such as hearings in any administrative procedures and or an open court.

## VIII. SECOND CLAIM FOR RELIEF
### (Violation of Civil Rights Act 42 U.S.C. §§ 1981 and 1983)

_____

\* That U.S. Passport, on its front page, solemnly state as follows, in English, French and Spanish languages:

"The Secretary of State of the United States of America hereby requests that all whom it may concern to permit the citizen/national of the United States named herein to pass without delay or hindrance and in case of need to give all lawful aid and protection." The validity of the U.S. passport gives Plaintiffs *prima facie* evidence that the bearer should not be delayed or hindered by any governments because the bearer of that validly issued passport is a citizen or national of the United States, as being officially declared by the U.S. Secretary of State, a Defendant in this case.  Defendant DOS and all its subordinate official agencies are part of the Executive Branch.  The Executive Branch is not the government branch which is legally authorized or statutorily empowered under law, or by the U.S. Congress, to take away an officially issued U.S. Passport from the "named bearer", much less to take it away from the "named bearer" without offering due process.

66. The individual defendants acted under color of law to deny Plaintiffs their constitutionally protected rights to liberty and property by arbitrarily taking their U.S. citizenship, as a practical matter for all aspects, in violation of laws, and to discriminate on the basis of race and original ethnicity, by denying their full and fair proceedings, in violation of 42 U.S.C. §§ 1981 and 1983.

## IX. **THIRD CLAIM FOR RELIEF**
(Violation of the Immigration and Nationality Act)

67.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 76 inclusive.
68. Defendants have violated and continue to violate INA Section 340, 8 U.S.C. § 1421; INA Section 340(a); and 8 U.S.C. § 1451(a):

a.      by failing to initiate an action in a court competent to hear naturalization matters for the purpose of revoking and setting aside the order admitting such person to citizenship.

b.      by failing to present "clear, unequivocal, and convincing" evidence to prove Plaintiffs procured their naturalization certificates and U.S. Passports by the concealment of a material fact or by willful misrepresentation.

   69. United States attorneys shall institute actions to revoke naturalization, in appropriate circumstances, in United States District Courts. 8 U.S.C. § 1451(a). The district court revocation procedure applies to any naturalization and certificate granted "under the provisions of this subchapter" 8 U.S.C. § 1451(g), -- which is to say, it applies to naturalizations and certificates granted by the Attorney General-- as well as to any naturalizations and certificates granted by any court or the commissioner under prior law.*id.* The "Revocation of Naturalization" section includes a subsection saying that nothing in the section limits the power of the Attorney General to reopen or vacate an order naturalizing a person. A subsequent section is entitled "Cancellation of certificates issued by Attorney General, the Commissioner or a Deputy Commissioner; action not to affect citizenship status."8 U.S.C. § 1453.  It says that the Attorney General can "cancel" a certificate of citizenship on various grounds, but the cancellation "shall affect only the document and not the citizenship status of the person in whose name the certificate was issued."*id.*

   Citizenship in the United States of America is among our most valuable rights. For many of us, it is all that protects our life, liberty, and property from arbitrary deprivation. An executive Department cannot simply decide, without express statutory authorization, to create an internal executive procedure to deprive people of those rights without even going to court; nor can or should two executive Departments conspire and act in collusion to do so. Congress has provided one way to revoke the citizenship of a naturalized American citizen: that is for a United States Attorney to file a petition in a United States District Court. There is no statutory warrant for a second way, i.e., for USCIS to revoke a person's citizenship administratively. GORBACH v. RENO, U.S. 9th Circuit Court of Appeals, 2000.

## X. FOURTH CLAIM FOR RELIEF
(Violation of the Administrative Procedure Act)

70. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 79 inclusive.

71. Defendants are in violation of, under color of law, the Administrative Procedure Act, 5 U.S.C. § 701 et seq., (a) in that they have unlawfully withheld and unreasonably delayed agency action to which the Plaintiff is entitled and (b) in that they have taken action that is arbitrary and capricious, an abuse of discretion and not in accordance with law:

i. by arbitrarily taking or revoking Plaintiffs' U.S. Passports while knowing these Plaintiffs are the U.S. citizens, *de jure*;

ii. by arbitrarily "canceling" Plaintiffs' U.S. Naturalization Certificate without due process, knowing such cancellation would inevitably cause harm to Plaintiffs, of all ethnic Chinese origin, that without due process of law stripped them of their constitutionally protected vital rights of liberty and property;

iii. By deliberately and persistently failing to respond to Plaintiffs' inquiries in a timely manner.

## XI. IRREPARABLE INJURY

72. As a result of the Defendants' failure to perform their duty, Plaintiff has suffered, is suffering and will continue to suffer irreparable harms, property damages and loss of freedom for movement. They have been deprived of the substantial and unique benefits of citizenship, including protection of the laws of the United States equal to that granted to citizens; political rights, including the right to vote; the right to enter and remain in the United States; freedom of movement and travel; the right to obtain a United States passport; and protection from the United States government when traveling outside the United States.

## XII. REQUEST FOR RELIEF

73. WHEREFORE, Plaintiff requests that this Court:

A. Plaintiffs Prays that this Honorable Court enter a Judgment in favor of the Plaintiff and compensate Plaintiffs for the damages for $1.00.

B. Declaring that defendants violated Plaintiffs' rights to life and liberty, and property under the Fifth and Fourteenth Amendments in discriminatory treatment without due process; and that such violations also offend 42 U.S.C. §§ 1981, 1983, *et seq*.;

C. Enjoining Defendants from continuing to deny Plaintiffs' vital constitutional rights under 5th and 14th Amendments on the basis of race and ethnic origin in violation of the 42 U.S.C. §§ 1981, 1983, *et seq;*;

D. Declare unlawful the violation by Defendants and their agents of the United States Constitution and 8 U.S.C. § 1421 and 1451 in failing to provide due process to

Plaintiffs, failing to renew Plaintiffs' U.S. Passports, failing to respond to Plaintiffs' inquiries timely, and confiscating and/or canceling Plaintiffs' U.S. Passports and Naturalization Certificates without due process.

E.   Declare Defendants' action arbitrary and capricious, abuses of discretion, and not in accordance with law, pursuant to the United States Constitution in failing to provide due process to Plaintiffs, failing to renew Plaintiffs' U.S. Passports, failing to respond to Plaintiffs' inquiries timely, and confiscating and/or canceling Plaintiffs' Naturalization Certificates and Passports without due process.

F.   Issue a preliminary and permanent injunction pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling Defendants and their agents to make a determination, under 8 U.S.C. § 1447(b) and 8 C.F.R. § 335.3, of the U.S. passport renewal applications of Plaintiffs and to notify Plaintiffs that their applications have been granted or denied and, if denied, of the procedures to be followed for the administrative or judicial appeal.

G.   Issue a writ in the nature of *mandamus*, pursuant to 28 U.S.C. § 1361 and 5 USC section 706(1), compelling Defendants and their agents to reinstate Plaintiffs' Naturalization Certificates and to reverse Defendant DOS's revocation of their U.S. Passports. *Mandamus* is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a governmental official who refuses to act.  Defendants have a duty to act on renewal of U.S. Passports when plaintiffs still hold the status of U.S. Citizens, and have failed to act on that duty. 8 U.S.C. § 1154.

H.   Grant attorneys' fees and costs of this suit under the Equal Access to Justice Act, 28 USC section 2412.

I.   Plaintiffs respectfully pray that trial of facts by Jury be ordered.

J.   Grant such other relief as this Court may deem just and proper.

Dated: January 14th, 2014

Attorney for Plaintiffs


_____
Xiaosheng Huang, Esq.


_____
Ning Ye, Esq.

**VERIFICATION**

I, Ning Ye, hereby verify that, to the best of my knowledge and belief, the matters stated in the Complaint for Declaratory and Injunctive Relief and for a Writ in the Nature of Mandamus to Compel Defendants to Return U.S. Passport and Naturalization Certificate are true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, NY on this 14th day  of January,  2014.


_____
/s/Ning Ye, Esq.