UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIHONG XIA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil No. 14-0057 (RCL) |
| | ) |
| JOHN F. KERRY, | ) |
| U.S. SECRETARY OF STATE, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

### I.    BACKGROUND

Plaintiffs Lihong Xia, Hoi Lun Li, We Liu, Jisong Chen, and Hua Chen claim to be naturalized citizens of the United States. Am. Compl. ¶¶ 2–3. They allege that the United States Citizenship and Immigration Services ("USCIS") and Department of State ("DOS") have violated their rights as citizens by unlawfully cancelling their naturalization certificates and revoking their United States passports. *Id.* at ¶¶ 36–37.

After the criminal investigation of Robert T. Schofield, USCIS determined that plaintiffs' naturalization certificates were obtained illegally and cancelled them pursuant to 8 U.S.C. § 1453. *See* Am. Compl. ¶¶ 24–25; Ex. 1, Donald Monica Decl., ¶¶ 7, 3–6. Plaintiffs were given 60 days to refute the decisions in a written statement or request a hearing; they were also notified of their right to be represented by an attorney. *See, e.g.*, Am. Compl. Ex. 9A (Xia's Notice of Intent to Cancel Certificate of Naturalization); ECF No. 5-1, at 79 (Liu's Notice of Intent to Cancel Certificate of Naturalization).    Plaintiff Xia, through her lawyer, did dispute the

cancellation and eventually persuaded the USCIS to reopen her case. Am. Compl. Ex. 7 (letter from Xia's attorney to USCIS); Ex. 11. However, her naturalization certificate was ultimately cancelled. Decl. Donald Monica ¶ 3. Plaintiff Liu also requested an interview: He responded to the allegations against him before USCIS officers in an examination where he was represented by counsel. ECF No. 5-1 (Notice of Decision and Order of Cancellation and Surrender). There is no evidence or allegation that any of the other plaintiffs responded to the allegations.

All plaintiffs also had the right to appeal the decisions to cancel their naturalization certificates to the Administrative Appeals Office. *See* Compl. at Ex. 9A; Mot. Dismiss, Ex. 1 (Decl. of Donald J. Monica); 8 C.F.R. § 342.8. Only Plaintiff Xia appealed her case, and her appeal was dismissed in June of 2014. Pl.'s Memorandum in Opp'n to Def.'s Mot. Dismiss, Ex. 1 (notice of cancellation of certificate). Plaintiff Xia was notified of her right to file a motion to reconsider or a motion to reopen if she believed the Administrative Appeals Office incorrectly applied law or policy or if she sought to present new facts for consideration. *Id.*

Additionally, DOS revoked the U.S. passports of plaintiffs Lihong Xia and Hoi Lun Li, pursuant to 22 C.F.R. § 51.62(b), on the grounds that their naturalization certificates were canceled.[1] *See* Mot. Dismiss Ex. 2, Declaration of Jonathan M. Rolbin, ¶¶ 3–4. Plaintiffs were not provided hearings, pursuant to 22 U.S.C. §§ 51.70-74. ECF No. 5-1, at 35. None of the plaintiffs have renewal passport applications pending with DOS. Decl. of Jonathan Rolbin, ¶ 8.

Plaintiffs bring suit alleging violations of the Due Process Clause of the Fifth Amendment; the Civil Rights Act, 42 U.S.C. §§ 1981, 1983; the Immigration and Nationality

---

[1] The status of the other plaintiffs' passports is very unclear. While plaintiffs state that "All of the above Plaintiffs' U.S. Passports were revoked," they submit no evidence supporting this fact. Compl. ¶ 6. DOS submits a declaration stating that plaintiff Liu's and Chen's passports have not been revoked because they were expired, and the DOS does not revoke expired passports. Mot. Dismiss Ex. 2 (Decl. of Jonathan Rolbin) at ¶¶ 5–6. The DOS says that none of the plaintiffs have renewal passport applications pending, and Plaintiffs do not allege otherwise. *Id.* ¶ 8. Plaintiffs also make unsupported allegations that Liu's passport was confiscated in 2007 and never returned, Compl. ¶ 28, while Chen was "unable to renew his U.S. passport," with no further allegations, Compl. ¶ 35.

Act, 8 U.S.C. 1421, 1451(a); and the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Am. Compl. ¶¶ 62–71. Plaintiffs argue that their naturalization certificates were wrongfully cancelled without sufficient evidence against them. Am. Compl. ¶¶ 24–27. As a result of these actions, plaintiffs claim they remain in "a nebulous and stateless limbo"—lacking legal documentation but maintaining U.S. citizenship as a matter of law. *Id.* ¶¶ 19, 30. This "hobbled 'U.S. citizenship'" does not afford them the benefits and privileges of citizenship. *Id.* ¶¶ 21, 31. They claim their rights were violated through "an opaque, unilateral administrative proceeding that afforded . . . no meaningful opportunity to respond to the accusations" against them. *Id.* ¶¶ 21, 36–37. Plaintiffs also allege they were so treated because of their Chinese ethnicity and nationality. *Id.* ¶¶ 22–23, 37.

Plaintiffs prayer for relief is slightly unclear. They seek "a preliminary and permanent injunction . . . compelling Defendants and their agents to make a determination . . . of the US. Passport renewal applications of Plaintiffs and to notify Plaintiffs that their applications have been granted or denied and, if denied, of the procedures to be followed for the administrative or judicial appeal." Am. Compl. ¶ 73. However, they also ask for a writ "compelling Defendants and their agents to reinstate Plaintiffs' Naturalization Certificates and to reverse Defendant DOS's revocation of their U.S. Passports." *Id.*

Defendants filed the instant motion to dismiss, arguing that this Court lacks subject-matter jurisdiction over plaintiffs' claims.

## II.    SUBJECT-MATTER JURISDICTION

### A. Legal Standard

Defendants move to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Federal courts are courts of limited

jurisdiction. When a party files a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *Carney Hosp. Transitional Care Unit v. Leavitt*, 549 F. Supp. 2d 93, 95 (D.D.C. 2008) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)) (other citation and internal quotation marks omitted) (alterations in original). A court considering a motion to dismiss for lack of jurisdiction must accept the factual allegations in the complaint as true. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). This "tenet" does not apply to legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When assessing a motion to dismiss under Rule 12(b)(1), a court may consider any undisputed facts in the record, or "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## B. Analysis

Plaintiffs allege violations of both federal law (42 U.S.C. §1983, the INA, and the APA) and the Fifth Amendment of the United States Constitution. Typically, this Court would have jurisdiction over such claims pursuant to 28 U.S.C. § 1331, which grants district courts "jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." However, because defendants here are federal agency officials, they have raised the defense of sovereign immunity. The general principle that the United States cannot be sued without the consent of Congress extends to federal agencies. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

"[A] plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss." *Jackson v. Bush*, 448 F.

Supp. 2d 198, 200 (D.D.C. 2006) (citing *Tri–State Hosp. Supply Corp. v. United States*, 341 F.3d

571, 575 (D.C. Cir. 2003)). "A waiver of the Federal Government's sovereign immunity must be

unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187,

192 (1996).

    In their reply brief, plaintiffs argue that "[d]efendants have no sovereign immunity," Pl.'s

Reply 5, but their explanation is less than clear.[2]    Regardless, plaintiffs do assert the

Administrative Procedure Act as one basis for this Court's jurisdiction over their claims.  Section

702 of the APA waives the federal government's immunity in suits seeking relief other than

money damages.  It states, in part:

> An action in a court of the United States seeking relief other than money damages
> and stating a claim that an agency or an officer or employee thereof acted or
> failed to act in an official capacity or under color of legal authority shall not be
> dismissed nor relief therein be denied on the ground that it is against the United
> States . . . .

5 U.S.C. § 702.  "Issues of sovereign immunity in the context of injunctive relief against federal

officers of the United States must be resolved with reference to § 702." *Cobell v. Babbitt*, 30 F.

Supp. 2d 24, 31 (D.D.C. 1998).  "The APA's waiver of sovereign immunity applies to any suit

whether under the APA or not." *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1328

(D.C. Cir. 1996) (citing cases).

    Defendants argue that the APA cannot provide the necessary waiver because the APA

permits judicial review only where the plaintiff has "no other adequate remedy in a court." Mot.

Dismiss at 13 (citing 5 U.S.C. § 702).  According to defendants, plaintiffs have another judicial

---

[2] They seem, for example, to rely on *Bivens*.  Pl.'s Reply 6.  However, Plaintiffs' complaint must be dismissed to the extent that it seeks relief against defendants in their individual capacities because of its complete failure to allege facts indicating the personal involvement of any defendant. *Speights v. Pallante*, 968 F. Supp. 2d 202, 203 (D.D.C. 2013) (citing *Iqbal*, 556 U.S. at 676).  "Bivens claims cannot rest merely on respondeat superior . . . [t]he complaint must at least allege that the defendant federal official was personally involved in the illegal conduct." *Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997).  Furthermore, plaintiffs need not plead a *Bivens* cause of action because they do not seek monetary damages.

remedy: 8 U.S.C. § 1503. *Id.* Although this—if true—bears on the Court's power to hear a suit brought under the APA, it "does not affect the Court's sovereign immunity analysis *per se.*" *Cobell*, 30 F. Supp. 2d at 31, n.9. And even without the application of the APA, "[i]t is well-established that sovereign immunity does not bar suits for specific relief against government officials where the challenged actions of the officials are alleged to be unconstitutional." *Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984). Defendants are not entitled to sovereign immunity to the extent that plaintiffs seek only injunctive and declaratory relief.

## III.   FAILURE TO STATE A CLAIM

Defendants' Motion to Dismiss is based on Rule 12(b)(1); however, they often couched their subject-matter jurisdiction arguments in terms of the merits. For example, they argued that this Court lacks subject-matter jurisdiction in part because plaintiffs have not adequately stated a cause of action under § 1983, Mot. Dismiss 2, and plaintiffs' due process claim is without merit, Def.'s Reply 3. But jurisdiction is not defeated by the possibility that plaintiffs' allegations might fail to state a cause of action on which they could actually recover. "Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." *Bell v. Hood*, 327 U.S. 678, 682 (1946). "If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." *Id.*[3]

---

[3] The Supreme Court has recognized an exception where "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682–83. While "the accuracy of calling these dismissals jurisdictional has been questioned," *id.*, the alleged violations of federal law and the Constitution here are not immaterial but form the basis of the relief sought. And furthermore, at least plaintiffs' Fifth Amendment claim is not so patently without merit as to justify dismissal for lack of jurisdiction.

As discussed, this Court has federal question jurisdiction over plaintiffs' claims arising under federal law and the United States Constitution, and we do not decline jurisdiction on the basis that plaintiffs' claims are likely without merit. Such issues are properly considered on a Rule 12(b)(6) motion to dismiss for failure to state a claim.

## A. Legal Standard

While defendants' Motion to Dismiss does not explicitly mention Rule 12(b)(6), as noted, it delves into the merits of plaintiffs' claims. Their arguments surely put plaintiffs on notice as to the potential weaknesses in their pleadings. Furthermore, this Court has the authority to dismiss suits for failure to state a claim sua sponte.

The Court may dismiss claims sua sponte where, as here, it "appears beyond doubt that the facts alleged in the complaint would not entitle the plaintiff to relief." *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 726–27 (D.C. Cir. 1990); *see also Jaeger v. United States*, No. No. CIUV.A. 06-625(JDB), 2006 WL 1518938, at *1 (D.D.C. May 26, 2006) (concluding that when "the failure to state a claim is patent, it is practical and fully consistent with plaintiffs' rights and the efficient use of judicial resources for the Court to dismiss the action sua sponte") (quotation marks and citation omitted). Thus, while "the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor," if the Court determines that plaintiffs' complaint could not possibly entitle them to relief it may dismiss the complaint sua sponte for failure to state a claim for which relief can be granted. *United States v. Tesoro Corp.*, 783 F. Supp. 2d 30, 31 (D.D.C. 2011).

To survive a motion to dismiss, the pleading must contain enough factual allegations to "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is "plausible on its face" when the plaintiff "pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (internal quotations omitted).   While many well-pleaded complaints are conclusory, the Court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. Dist. of Columbia*, 353 F.3d 36, 39–40 (D.C. Cir. 2004).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."    *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 555).

When a court dismisses a complaint sua sponte for failure to state a claim, it must generally give the plaintiff leave to amend the complaint.  A sua sponte dismissal for failure to state a claim without leave to amend is reversible error unless "the claimant cannot possibly win relief." *See Davis v. Dist. of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (quoting *Baker*, 916 F.2d at 726). This will be the case either when "the facts alleged affirmatively preclude relief, or because, even though plaintiff makes clear that he has facts to add to his complaint, he would not have a claim upon which relief could be granted even with those facts." *Id.*

## B. Analysis

Plaintiffs allege violations of the United States Constitution (Count One), the Civil Rights Act (Count Two), the Immigration and Nationality Act (Count Three), and the Administrative Procedure Act (Count Four). Am. Compl. 14–16.

### 1. *United States Constitution*

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Plaintiffs allege a cause of action under the Fifth Amendment Due Process Clause because their "U.S. passports and naturalization

certificates were taken away by Defendants without due process of law such as hearings in any administrative procedures and or an open court." Am. Compl. ¶ 65.[4]

Federal courts have permitted suits brought directly under the Fifth Amendment. *See, e.g., Bolling v. Sharpe*, 347 U.S. 497 (1954) (permitting plaintiffs alleging racial discrimination in schools to recover equitable relief directly under the Fifth Amendment and the general federal-question jurisdiction of the district courts); *Jacobs v. United States*, 290 U.S. 13 (1933) (holding that a plaintiff who alleged that his property had been taken by the United States for public use without just compensation could bring suit directly under the Fifth Amendment).

a. *Exhaustion*

The Supreme Court has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts. *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992), *superseded by statute on other grounds*. Where Congress has not required exhaustion, whether to require exhaustion is within the discretion of the district court. *Id.* at 144. Exhaustion is typically required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency. *Id.* Thus, "[t]he exhaustion requirement may be waived in only the most exceptional circumstances." *Ly v. U.S. Postal Serv.*, 775 F. Supp. 2d 9, 12 (D.D.C. 2011) (quoting *Comm'ns Workers of AT&T v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 432 (D.D.C. 1994)).

Only plaintiff Xia has administratively exhausted her claim by objecting to the cancellation of her naturalization certificate and appealing that decision. The other plaintiffs failed to appeal USCIS's decisions. Pursuant to federal statute, DOS may base its decision to revoke passports on the USCIS's cancellation of a naturalization certificate on the basis of fraud,

---

[4] Plaintiffs also allege a claim under the Fourteenth Amendment. Opp'n 12. However, the Fourteenth Amendment is not applicable to the federal government. *See* U.S. Const. amend. XIV; *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21 (1987).

presuming that all the mandates of due process have already been satisfied in the initial determination. Therefore, the remaining plaintiffs have not administratively exhausted their claims.

Furthermore, plaintiffs have insufficiently demonstrated their entitlement to waiver of the exhaustion requirement. The record does not establish that requiring exhaustion would be futile: There is no "certainty of an adverse decision or indications that pursuit of administrative remedies would be clearly useless." *Cost v. Soc. Sec. Admin.*, 770 F. Supp. 2d 45, 50 (D.D.C. 2011). Plaintiffs have not shown a certainty of an adverse determination about an alleged violation they never presented for review. Moreover, plaintiffs would not suffer irreparable harm if the exhaustion requirement were enforced against them. "An irreparable harm is an imminent injury that is both great and certain to occur, and for which legal remedies are inadequate." *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 9 (D.D.C. 2009) (citation omitted). Although it is too late for plaintiffs to exhaust their administrative remedies, there are other federal causes of action they may pursue that would provide sufficient relief.

b. *Insufficient pleadings*

But even if all plaintiffs had exhausted their claims, their broad assertions that their rights were violated do not satisfy *Iqbal's* pleading requirements. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

To state a constitutional violation of a procedural due process right, a plaintiff must allege facts showing that she was deprived of a liberty or property interest that warrants due process protection. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). She must then

demonstrate that the deprivation occurred without constitutionally sufficient procedures. *See Steinberg v. Dist. of Columbia*, 901 F. Supp. 2d 63, 75 (D.D.C. 2012).

Based on plaintiffs' allegations, the Court will assume, without deciding, that they were deprived of a protected liberty interest. Nevertheless, this count must be dismissed. It is impossible to discern the procedures to which plaintiffs believe they were entitled but deprived. "To state a procedural due process claim, a complaint must suggest 'what sort of process is due.'" *Elkins v. Dist. of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012) (quoting *Doe by Fein v. Dist. of Columbia*, 93 F.3d 861, 869 (D.C. Cir. 1996)). The complaint fails to do so here, and therefore falls short of Rule 8's pleading requirements.

While plaintiffs make the vague allegation that they were denied "hearings in any administrative procedures and or an open court," Am. Compl. 14, their filings demonstrate that in fact plaintiffs were provided with process that included hearings and the right to appeal. Plaintiffs were each given notice of the decision to cancel their naturalization certificates as well as 60 days in which to refute the decisions in a written statement or request a hearing; they were also notified of their right to be represented by an attorney. *See, e.g.*, Am. Compl. Ex. 9A (Xia's Notice of Intent to Cancel Certificate of Naturalization); ECF. No. 5-1, at 79 (Liu's Notice of Intent to Cancel Certificate of Naturalization). Plaintiffs also had the right to appeal the cancellation of their naturalization certificates to the Administrative Appeals Unit ("AAO"). *See* Compl. at Ex. 9A; Mot. Dismiss Ex. 1 (Decl. of Donald J. Monica); 8 C.F.R. § 342.8. It is thus entirely unclear what additional procedures plaintiffs believe they were guaranteed pursuant to the Due Process Clause.

While all of plaintiffs' well-pled factual allegations must be accepted as true, "'naked assertion[s]' devoid of 'further factual enhancement'" need not be accepted. *Iqbal*, 556 U.S. at

678 (internal citation omitted). For these reasons, all plaintiffs have failed to state due process claims for which relief can be granted.

   *2. § 1983*

   Plaintiffs allege violations of 42 U.S.C. § 1983, noting that:

   [T]he individual defendants acted under color of law to deny Plaintiffs their
   constitutionally protected rights to liberty and property by arbitrarily taking their
   U.S. citizenship, as a practical matter for all aspects, in violation of laws, and to
   discriminate on the basis of race and original ethnicity, by denying their full and
   fair proceedings, in violation of 42 U.S.C. §§ 1981 and 1983.

Am. Compl. ¶ 66. However, plaintiffs do not adequately state a cause of action under Section 1983 because they have not alleged that Defendants acted "under color of state law."

   To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct is attributable at least in part to a person acting "under color of state law," and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant will be found to have acted under color of state law if their alleged illegal action was exercise of power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." *Brown v. Short*, 729 F. Supp. 2d 125, 132 (D.D.C. 2010) (internal quotations omitted). Section 1983 does not apply to federal officials acting purely under the color of federal law. *Johnson v. U.S.*, 642 F. Supp. 2d 1, 4 (D.D.C. 2009). Action taken "under color of state law" is thus an essential element of any suit brought under Section 1983.

   Plaintiffs' complaint does not allege that Defendants acted "under color of state law," instead generally noting that defendants acted "under color of law, with the intent and for the

purpose of depriving Plaintiffs of inalienable rights secured under the Constitution and law of the United States." Am. Compl. ¶ 1.

Indeed, it is unlikely that Defendants *can* act under state law. DOS derives its power from federal law. 22 U.S.C. § 211a; 22 C.F.R. § 51.5(a). If DOS revoked any of plaintiffs' passports, it was pursuant to federal law. 22 C.F.R. § 51.62(b), §§ 51.774. USCIS also derives its power from federal law. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 110 Stat. 2135 (Nov. 25, 2002). USICS is the federal agency responsible for adjudicating naturalization applications and issuing naturalization certificates. *See generally* 8 U.S.C. §§ 1421–1453.

Plaintiffs do not and likely cannot allege that Defendants acted under color of state law. Furthermore, they seem to concede their claims under Section 1983. Opp'n 3 ("The Plaintiffs admit that citing Section 1983 could be a flaw in our complaint . . . ."). Therefore, the Court must dismiss this claim for failure to state a cause of action.

Plaintiffs maintain that they have a cause of action under 42 U.S.C. § 1981. Opp'n 4. However, "[t]he rights protected by [Section 1981] are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Section 1981 does not apply to federal defendants acting under color of federal law. *See, e.g.*, *Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998). As such, Section 1981 is inapplicable to plaintiffs' claims. Nor do plaintiffs assert a valid claim under Section 1988. This section, 42 U.S.C. § 1988, refers to attorney's fees and expert fees that can be awarded to prevailing parties. It does not purport to create a stand-alone cause of action.

Because it appears beyond a doubt that the facts alleged would not entitle plaintiffs to relief, the Court dismisses plaintiffs' claims under the Civil Rights Act.

### 3. *Immigration and Nationality Act*

Plaintiffs also allege that defendants have violated Sections 1421 and 1451(a) of the INA. Am. Compl. 15. The claims under the INA suffer the same defect—failure to exhaust—as do the claims under the Fifth Amendment. *See* Part III.B.1.a, *supra*. Again, even if the Court excused this, plaintiffs have failed to state a claim under the INA.

Section 1421 merely lays out the Attorney General's authority to naturalize persons, 8 U.S.C. § 1421, and the Court does not see how this statute could have been violated on the alleged facts. Section 1451(a) grants the Attorney General the power to revoke certificates of naturalization, while Section 1451(g) provides naturalization courts with the authority to revoke its citizenships judgments. Plaintiffs summarize the contents of these statutes before alleging that "an executive Department cannot simply decide, without express statutory authorization, to create an internal executive procedure to deprive people of those rights without even going to court." Am. Compl. 15. But defendants acted with the express authorization of Section 1451(a), as plaintiffs themselves suggest. And while plaintiffs believe that USCIS has revoked their citizenship administratively, that is untrue. Section 1451(a) expressly limits the Attorney General's authority to the document itself; his decision not does affect a person's actual status.

Plaintiffs make no further allegations involving the INA. Because they have not alleged any facts entitling them to review under this statute, the Court dismisses their claims.

### 4. *Administrative Procedure Act*

In their final count, plaintiffs allege defendants have violated the APA by "arbitrarily taking or revoking Plaintiffs' U.S. Passports while knowing these Plaintiffs are the U.S. citizens, *de jure*"; "arbitrarily 'canceling' Plaintiffs' U.S. Naturalization Certificate without due process . . ."; and "deliberately and persistently failing to respond to Plaintiffs' inquiries in a

14

timely manner." Am. Compl. ¶ 71. The claims under the APA suffer the same defect—failure to exhaust—as do their previous claims. *See* Part III.B.1.a, *supra*. Additionally, plaintiffs fail to support a specific claim under the APA with factual allegations demonstrating how the statute was violated and by whom.

"[M]ere conclusory statements, do not suffice" to state a cognizable claim. *Iqbal*, 556 U.S. at 678. Plaintiffs have failed to state a cognizable claim. In order to state a claim, plaintiffs must clearly allege facts to support their conclusion that the program statement at issue was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). While plaintiffs make the broad claims that their rights were violated by the "arbitrary" revocation of their passports, it seems clear that DOS revoked them after being informed by USCIS that their naturalization certificates had been cancelled. Similarly, plaintiffs do not explain what process they were denied when their naturalization certificates were cancelled, especially when plaintiffs *were* provided with hearings and a right to appeal.

Even if plaintiffs had adequately pleaded specific violations of the APA, plaintiff Xia likely would be precluded from such a claim because she has an alternate judicial remedy available to her. The APA permits judicial review only where the plaintiff has "no other adequate remedy in a court." 5 U.S.C. § 702. In other words, a plaintiff may sue under the APA only when there are no other judicial remedies available. See *Hassan v. Holder*, 793 F. Supp. 2d at 446 (D.D.C. 2011). Section 1503 of the INA, which plaintiffs have not invoked in this case—inexplicably in the case of plaintiff Xia—permits a person claiming to be a national of the United States who has been denied the rights and privileges of citizenship to seek a "judgment declaring him to be a national of the United States." 8 U.S.C. § 1503(a).

15

However, only plaintiff Xia would be able to pursue a remedy pursuant to Section 1503 because it requires administrative exhaustion. *See* 8 U.S.C. § 1503(a) ("An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege."); *see also Roman-Salgado v. Holder*, 730 F. Supp. 2d 126, 131 (D.D.C. 2010) (construing Section 1503 to require administrative exhaustion before suit); *Harris v. Dep't of Homeland Sec.*, No. 13-61243-CIV, 2014 WL 1823289, at *4 (S.D. Fla. May 1, 2014), as amended (May 8, 2014) (listing circuits that have found Section 1503's exhaustion requirement to be jurisdictional). As noted above, only plaintiff Xia has administratively exhausted her claims, and therefore is entitled to bring a claim under Section 1503.

At the heart of Xia's claim is her desire to be recognized as a United States citizen: to be afforded due process and obtain a lawful passport and Naturalization Certificate. Am. Compl. ¶ 73. This seems to be exactly the opportunity Section 1503 offers her. *See Hassan*, 793 F. Supp. 2d at 446 (dismissing claims under the APA and Mandamus Act because plaintiff had adequate relief under Section 1503). Although plaintiff asserts that Section 1503 would not provide her adequate relief, she does not clearly explain why it is insufficient. In fact, in their response to defendants' motion to dismiss, plaintiffs inexplicably rely on Section 1503 as a basis for this Court's jurisdiction. Opp'n 9–12. Xia's only argument against the application of Section 1503 is her contention that she is still a legal citizen. Opp'n 5. She is thus concerned that such a holding would put millions of naturalized citizens at "risk of their citizenship being administratively canceled at any time." *Id.* This law does no such thing. Section 1503 does not sanction such behavior; on the contrary, it provides a remedy for citizens alleging exactly that conduct. Section 1503 permits citizens to have an Article III court adjudge their citizenship status *de novo* if it is questioned. A successful adjudication would permit Xia to obtain the

16

relevant paperwork. *See Cartier v. Sec'y of State*, 506 F.2d 191, 199 (D.C. Cir. 1974) (noting that the remedy for claiming citizenship under 8 U.S.C. § 1503 is more than adequate to bar a writ of mandamus).

In sum, plaintiffs have failed to plead with specificity a claim upon which relief can be granted.  Furthermore, plaintiff Xia has failed to demonstrate why Section 1503 of the INA is an insufficient remedy.  Accordingly, this Court dismisses all plaintiffs' claims under the APA.

## IV.    CONCLUSION

For the foregoing reasons, the defendant's 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is DENIED.  However, because it appears beyond doubt that the facts alleged in the current complaint would not entitle plaintiffs to relief, plaintiffs' claims are DISMISSED without prejudice, of our own accord.  A separate order consistent with this Opinion shall issue on this 10th day of November, 2014.

Signed by Royce C. Lamberth, United States District Judge, on November 10, 2014.